UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUNIOR ONOSAMBA-OHINDO, on behalf of
himself and all others similarly situated, and

ANTONIO LOPEZ AGUSTIN, on behalf of
himself and all others similarly situated,

                Petitioners/Plaintiffs,

     v.

WILLIAM BARR, in his official capacity as
Attorney General of the Department of Justice,
et al.,

                Respondents/Defendants.
_____

**DECISION AND ORDER**

1:20-CV-00290 EAW

## INTRODUCTION

Petitioners/plaintiffs Junior Onosamba-Ohindo ("Class Petitioner") and Antonio Lopez Agustin ("Subclass Petitioner") (collectively "Petitioners") have filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and complaint for declaratory and injunctive relief, purportedly on behalf of themselves and all other persons similarly situated. (Dkt. 1 ("Petition")). At the time the Petition was filed, Petitioners were both civil immigration detainees held under 8 U.S.C. § 1226(a) pending their removal proceedings. Petitioners seek: class certification; a declaratory judgment that the "actions, practices, policies, and/or omissions" of defendants/respondents William Barr, the United States Department of Justice ("DOJ"), James McHenry, the Executive Office for Immigration Review ("EOIR"), Matthew Albence, Chad F. Wolf, and Jeffrey Searls

- 1 -

(collectively "Respondents") violate the Immigration and Nationality Act ("INA") and its implementing regulations, the Administrative Procedure Act ("APA"), and the Fifth Amendment to the U.S. Constitution; a declaratory judgment that each class member is entitled to a custody hearing at which the government bears the burden to justify continued detention by proving by clear and convincing evidence that the detained individual is a danger to others or a flight risk; and an order stating that each class member must be released unless provided with such a custody hearing. (*Id.* at 18-19).

Presently pending before the Court are Petitioners' motion for class certification (Dkt. 2), Petitioners' motion for a preliminary injunction (Dkt. 15), and Respondents' motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 22). For the reasons that follow, the Court grants in part and denies in part Respondents' motion to dismiss; grants in part, denies in part, and reserves decision in part on Petitioners' motion for class certification; and grants in part and denies in part Petitioners' motion for a preliminary injunction.

## BACKGROUND

### I.    Factual Background

#### A.    Detention Hearings Pursuant to 8 U.S.C. § 1226(a)

The federal government has authority under the INA to detain people during immigration proceedings that may result in their removal. *See generally* 8 U.S.C. § 1226. The INA requires that certain immigration detainees—namely, people who were present in the United States before their arrest, are currently in removal proceedings, and lack

certain criminal convictions that would otherwise subject them to mandatory detention—receive an initial determination from United States Immigration and Customs Enforcement ("ICE") regarding whether they may be released while their removal cases proceed. *See id.* If ICE does not release an individual, that person may ask an immigration judge ("IJ") to review ICE's custody determination in a bond hearing. *See id.* § 1226(a); 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1). IJs are employees of DOJ that, among other things, decide whether an alien is removable from the United States. 8 U.S.C. §§ 1101(18), 1229a(c)(1)(A). They are attorneys appointed by the Attorney General and "act as the Attorney General's delegates in the cases that come before them." 8 C.F.R. § 1003.10(a).

The Board of Immigration Appeals ("BIA") is an administrative appellate body within EOIR that reviews the decisions of IJs. *See* 8 C.F.R. § 1003.1(a)(1). Members of the BIA are also attorneys appointed by the Attorney General who "act as the Attorney General's delegates in the cases that come before them." *Id.* Current BIA decisional precedent holds that during a bond hearing, the burden is on the detainee "to show to the satisfaction of the [IJ] that he or she merits release on bond," and that an IJ "must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

The Buffalo, New York area has two immigration courts. (Dkt. 1 at ¶ 19). The Batavia Immigration Court is located inside the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, and hears mostly cases by detained individuals. (*Id.*). The Buffalo Immigration Court is located in Buffalo, New York, and hears mostly cases

by non-detained individuals, although Buffalo IJs also hear cases by detained individuals primarily via video feed. (*Id.*).  Between approximately March 2019 and December 2019, the Batavia and Buffalo Immigration Courts also heard custody and removal proceedings for about 1,000 people detained at the Richwood Correctional Center ("RCC") in Monroe, Louisiana.  (*Id.* at ¶ 21).  Typically during these proceedings, the detainee would appear via video from the RCC while the IJ and attorneys would appear in person at the BFDF courtroom.  (*Id.*).

At the time the Petition was filed, Class Petitioner was arrested by ICE and detained under 8 U.S.C. § 1226(a) at the BFDF.  (Dkt. 1 at ¶ 41).  On February 10, 2020, Class Petitioner appeared before IJ Susan Aikman for a custody hearing.  (*Id.* at ¶ 42).  At the hearing, Class Petitioner presented evidence that he was homeless and living in a refugee shelter.  (*Id.* at ¶ 43).  He asked the court to consider releasing him with conditions other than a money bond, suggesting either an ankle monitor or regular in-person ICE check-ins, or alternatively with the minimum bond allowed under the statute, $1,500.  (*Id.*); *see* 8 U.S.C. § 1226(a)(2)(A).  The government did not file any evidence at his custody hearing and conceded Class Petitioner had no criminal history.  (Dkt. 1 at ¶ 44).  The IJ stated that she could not consider those alternatives to a money bond and set bond at $8,000.  (*Id.* at ¶ 45).  Petitioners contend the IJ set an $8,000 bond in part because she had placed the burden on Class Petitioner to prove that he was not a flight risk and was not a danger to others, rather than imposing that burden on the government.  (*Id.* at ¶ 46).

At the time the Petition was filed, Class Petitioner remained detained because he could not afford the $8,000 bond.  (*Id.* at ¶ 47).  Petitioners allege that during Class

Petitioner's detention, he suffered from chest pains, back pains, and migraines without adequate medical treatment, and that separation from his wife and community also caused him "severe hardship." (*Id.* at ¶ 48). Additionally, Class Petitioner's detention severely inhibited his ability to gather evidence for his underlying application for immigration relief and to assist his attorney in assembling his materials, a difficulty compounded by the fact that he speaks little English. (*Id.* at ¶ 49). On March 16, 2020, Class Petitioner was released from immigration custody after the Brooklyn Bail Fund posted his bond. (Dkt. 15-10 at ¶¶ 2-4). Class Petitioner presently lives with his wife in Buffalo, New York. (*Id.* at ¶ 5).

### B. The "No Bond" Policy

Petitioners further allege that two IJs in this District—Philip Montante ("IJ Montante") and Mary Baumgarten ("IJ Baumgarten")—have adopted a policy of "denying bond in almost every case and very rarely altering ICE initial custody determinations (with respect to either the grant of bond or the amount of bond)." (Dkt. 1 at ¶ 27). According to Petitioners, these two IJs have "foregone individualized review in favor of effectively rubber-stamping ICE's initial custody determination." (*Id.*). In support of this claim, Petitioners note that these two IJs "have denied release in 95% of the cases before them." (*Id.* at ¶ 25). Moreover, of the 204 IJs across the country who decided 50 or more cases in this same period, "[IJs] Montante and Baumgarten have the third and fourth lowest grant[ ] rate, respectively." (*Id.*). In contrast, the five other IJs who decided cases at Batavia and Buffalo during this same period granted bond 51.3%, 45.7%, 40.9%, 28.1%, and 18% of the time. (*Id.* at ¶ 26). Petitioners contend that because IJs Montante and Baumgarten deny

bond in almost every case and very rarely alter initial custody determinations, they have "abdicat[ed] [their] responsibility to serve as neutral adjudicators in custody determinations." (*Id.* at ¶ 27).

Subclass Petitioner is a 36-year-old man who came to the United States in 1999. (*Id.* at ¶ 50). He has lived in the United States for over twenty years and has an eight-year-old daughter who is a citizen of the United States. (*Id.*). On August 7, 2019, ICE arrested Subclass Petitioner after a raid at his workplace and detained him at the RCC. (*Id.* at ¶ 51). Subclass Petitioner has several traffic infractions and one misdemeanor conviction for possessing false identification from 2005 but has no violent or dangerous criminal history. (*Id.*). ICE made the initial custody determination to detain Subclass Petitioner without bond. (*Id.*).

Subclass Petitioner found an attorney working in Washington, D.C., willing to represent him *pro bono* at his custody hearing before IJ Baumgarten. (*Id.* at ¶¶ 53-54). However, IJ Baumgarten would not allow his attorney to appear telephonically, and rather than delay Subclass Petitioner's bond hearing to allow his attorney to travel to Batavia, IJ Baumgarten found substitute counsel "at the last minute." (*Id.* at ¶¶ 54-55). At the hearing on November 19, 2019, Subclass Petitioner introduced evidence that he had resided at the same address for eight years and had undertaken conversations with his landlord about buying the property, as well as evidence about his role as a caretaker and provider for his daughter. (*Id.* at ¶ 56). He also submitted eight letters from friends, neighbors, and community members attesting to his good character and role in the community, and two of his neighbors specifically offered to confirm that he would appear at all future proceedings.

(*Id.*).  However, five minutes into the hearing, IJ Baumgarten denied bond, finding that Subclass Petitioner had failed to meet his burden to prove that he was not a flight risk.  (*Id.* at ¶ 57).  She did not consider whether alternatives to detention could mitigate any flight risk that Subclass Petitioner posed.  (*Id.* at ¶ 57).

At the time the Petition was filed, Subclass Petitioner had been detained without bond for more than seven months at the RCC.  (*Id.* ¶¶ 58-59).  His detention made it more difficult for him to communicate with the *pro bono* attorney who is helping him apply for cancellation of removal.  (*Id.* at ¶ 60).  Additionally, he could not communicate with friends and family on the outside to help gather evidence and support for his application, and Batavia was too far for them to come to support him or testify on his behalf.  (*Id.*).  On April 6, 2020, Subclass Petitioner was released from custody on his own recognizance. (Dkt. 15-12).

## II.   <u>Procedural Background</u>

Petitioners filed the instant action (Dkt. 1) and motion to certify the class (Dkt. 2) on March 11, 2020, and the case was assigned to United States District Judge Lawrence J. Vilardo.  On April 10, 2020, Petitioners filed a motion for preliminary injunction (Dkt. 15) as to which the Court denied expedited consideration (Dkt. 16; Dkt. 18).  Respondents filed their response to the motion for preliminary injunction and the motion for class certification on April 27, 2020.  (Dkt. 23; Dkt. 24).  Petitioners replied to the motion for preliminary injunction on May 6, 2020 (Dkt. 28), and to the motion for class certification on May 13, 2020 (Dkt. 30).  On April 27, 2020, Respondents also filed their motion to dismiss (Dkt.

22).  Petitioners filed their opposition to the motion to dismiss on May 6, 2020 (Dkt. 27),

and on May 11, 2020, Respondents replied (Dkt. 29).

Oral argument on the motion to dismiss and the motion for preliminary injunction

was held before Judge Vilardo on May 15, 2020.   (Dkt. 31).   On May 28, 2020,

supplemental briefing was ordered regarding the inherently transitory exception to

mootness (Dkt. 32), which Respondents submitted on June 4, 2020 (Dkt. 34) and

Petitioners on June 10, 2020 (Dkt. 35).  The case was subsequently transferred to the

undersigned on July 22, 2020.  (Dkt. 36).

## DISCUSSION

### I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### A.   Legal Standard

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack

of subject matter jurisdiction if the court lacks the statutory or constitutional power to

adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the

action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17

(2d Cir. 2015) (quotation and citation omitted).   "A plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion

to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material

factual allegations in the [operative pleading]."  *Shipping Fin. Servs. Corp. v. Drakos*, 140

F.3d 129, 131 (2d Cir. 1998).  In addition, a court is not limited to the allegations in the

petition and can "refer to evidence outside the pleadings,"  *Luckett v. Bure*, 290 F.3d 493,

496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the [operative pleading] for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

## B.   Mootness

Respondents contend that Petitioners' claims are moot because both Petitioners have been released from immigration custody. (Dkt. 22-1 at 17-18). Petitioners respond that their claims are not moot because they face the threat of re-detention. (Dkt. 27 at 9). Alternatively, they claim that their claims are inherently transitory, an exception to the mootness doctrine. (*Id.* at 9-10; Dkt. 35). For the reasons that follow, this Court finds that Petitioners' claims fall within the inherently transitory exception to mootness.

"The mootness doctrine is rooted in the 'case or controversy' requirement of Article III of the Constitution, which describes 'the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.'" *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F. Supp. 2d 422, 428 (W.D.N.Y. 2008) (quoting

*Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001)). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "When a habeas petitioner has been released from custody after filing a petition, the petition may be moot, and the relevant inquiry becomes whether the case still presents a case or controversy under Article III, § 2 of the U.S. Constitution." *Denis v. DHS/ICE of Buffalo*, 634 F. Supp. 2d 338, 340 (W.D.N.Y. 2009); *see Johnson v. Reno*, 143 F. Supp. 2d 389, 391 (S.D.N.Y. 2001) ("A habeas corpus petition seeking release from (INS) custody is moot when the petitioner is no longer in (INS) custody."). "Thus, 'under the mootness doctrine, if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case, rather than issue an advisory opinion.'" *Farez-Espinoza v. Napolitano*, No. 08 CIV. 11060HB, 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004)).

The Supreme Court has long recognized a "narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). This type of claim has been described as "inherently transitory." *See County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) ("We recognized in *Gerstein* that '[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest

- 10 -

expires.'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980))).  The

"inherently transitory" exception to the mootness doctrine applies to class actions where it

is uncertain whether the court will be able to timely rule upon the certification of the class

"before the proposed representative's individual interest expires."  *Comer v. Cisneros*, 37

F.3d 775, 799 (2d Cir. 1994) (quotation marks and citation omitted); *Reynolds v. Lifewatch,*

*Inc.*, 136 F. Supp. 3d 503, 513 (S.D.N.Y. 2015) (same).  Thus, where the named class

representative no longer can maintain a personal interest in the litigation, the inherently

transitory doctrine may still save the class action.  *See Genesis Healthcare Corp. v.*

*Symczyk*, 569 U.S. 66, 76 (2013) ("[I]n cases where the transitory nature of the conduct

giving rise to the suit would effectively insulate defendants' conduct from review,

certification could potentially 'relate back' to the filing of the complaint.").  The Second

Circuit has held that the inherently transitory doctrine applies if "(1) it is uncertain that a

claim will remain live for any individual who could be named as a plaintiff long enough

for a court to certify the class; and (2) there will be a constant class of persons suffering

the deprivation complained of in the complaint."  *Salazar v. King*, 822 F.3d 61, 73 (2d Cir.

2016).

A plurality of the Supreme Court recently recognized the application of the

inherently transitory doctrine in the immigration habeas context.  *See Nielsen v. Preap*, 139

S. Ct. 954, 963 (2019) (plurality opinion).  *Preap* involved a class of § 1226(c) detainees

who argued that they were not subject to mandatory detention under that statute because

they had not been detained immediately upon their release from criminal custody.  The

plurality found that the plaintiffs' claims were not moot even though "by the time of class

certification the named plaintiffs had obtained either cancellation of removal or bond hearings." *Id.* at 963.  More specifically, the plurality opinion noted in *Preap*:

> [A]t least one named plaintiff in both cases had obtained release on bond, as opposed to cancellation of removal, and that release had been granted following a preliminary injunction in a separate case.  Unless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention.  And indeed, [the Court] later ordered that that injunction be dissolved.

*Id.* (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018)).

Alternatively, the Supreme Court found that it had jurisdiction because "the harms alleged are transitory enough to elude review."  *Id.*  This alternative holding found the plaintiffs' claims to be transitory because the "type of injury" the plaintiffs claimed—"that they would be harmed by detention without a hearing pending a decision on their removal"—"ends as soon as the decision on removal is made."  *Id.*  Because such a claim "is transitory[,] . . . the fact that the named plaintiffs obtained some relief before class certification does not moot their claims."  *Id.*; *see McLaughlin*, 500 U.S at 52 ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive [the Court] of jurisdiction.").

Respondents argue that *Preap* is inapposite for two reasons.  "First, the claims in *Preap* always expired after six months for any potential petitioner under then-existing Ninth Circuit precedent."  (Dkt. 34 at 2 (emphasis omitted)).  "Second, the *Preap* plaintiffs' relief was impermanent at the time of class certification because it was obtained as the

result of a preliminary injunction issued in a separate case, *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)."  (*Id.* (emphasis omitted)).[1]

It is true that under Ninth Circuit law at the time of class certification in *Preap*, the plaintiffs' claim for a bond hearing would become moot after six months because *Rodriguez* held that such a bond hearing was required after six months' detention as a matter of Due Process.  *See Rodriguez*, 715 F.3d at 1144.  However, the Supreme Court made no reference to that six-month time limit as the basis for its reasoning in *Preap*. Instead, *Preap* stated the inherently transitory doctrine applied because the claim to a bond hearing "ends as soon as the decision on removal is made."  139 S. Ct. at 963.  That same rationale applies to this case:  as soon as a final decision on the detainee's removal has been made or if a detainee is released while his immigration proceedings are ongoing (as occurred for both named Petitioners here), the detainee will no longer be held under § 1226(a).

Additionally, courts within this Circuit have recognized that the application of the inherently transitory exception is not restricted to "time-limited" assertions.  For example,

---

[1]     Defendants also assert in a footnote that *Preap*'s alternative holding "was not necessary for the decision, and is therefore *dicta*."  (Dkt. 34 at 7 n.7).  It is well established that a court need not address an argument asserted in a footnote.  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12 CIV. 7372 (AT), 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020) ("[C]ourts 'routinely decline[ ] to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised.'" (alterations in original) (quoting *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14 Civ. 10104, 2017 WL 3973951, at *20 n.36 (S.D.N.Y. Sept. 7, 2017))).  In any event, alternative holdings are not *dicta*.  *See Pyett v. Pa. Bldg. Co.*, 498 F.3d 88, 92 (2d Cir. 2007) (discussing that the court's conclusion in a different case "was an alternative holding, not *dicta*, and continues to bind our Court"), *rev'd and remanded on other grounds sub nom. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).

the Second Circuit, in applying the exception to housing discrimination suits, has stated that such actions "are acutely susceptible to mootness *because of the fluid composition* of the public housing population." *Comer*, 37 F.3d at 797 (emphasis added); *see Marisol A. v. Guiliani*, No. 95 Civ. 10533(RJW), 1998 WL 265123, at *6 (S.D.N.Y. May 22, 1998) (finding that "the population of New York City's child welfare system is equally fluid, . . . [as c]hildren enter and leave the system all the time"); *see also Zurak v. Regan*, 550 F.2d 86, 92 (2d Cir. 1977) (applying the exception to "inmates serving definite sentences of more than 90 days at Rikers Island . . . who are or will become eligible for conditional release . . . [b]ecause of the relatively short periods of incarceration involved and the possibility of conditional release"). Moreover, at least three district courts recently have found claims identical to those in this case to be inherently transitory. *See Velesaca v. Decker*, __ F. Supp. 3d __, No. 20 CIV. 1803 (AKH), 2020 WL 2114984, at *15 n.12 (S.D.N.Y. May 4, 2020) (discussing that although the named petitioners, who were aliens detained pursuant to § 1226(a), had already had bond hearings, "due to the recurrent nature of the issue here, the putative class action may continue"), *appeal filed*, No. 20-2153, 2020 WL 2114984 (2d Cir. July 9, 2020); *see also Dubon Miranda v. Barr*, No. 20-CV-1110, 2020 WL 2794488, at *5 (D. Md. May 29, 2020) (finding claims inherently transitory because "the length of [§ 1226(a) detention] cannot be ascertained at the outset, and . . . may be ended at any time" (internal quotation marks omitted)); *Brito v. Barr*, 395 F. Supp. 3d 135, 147 (D. Mass. 2019) (same because "it is uncertain whether any alien will be subject to § 1226(a) detention long enough to serve as a class representative").

Thus, this Court finds that Petitioners' claims are inherently transitory and may proceed even though Petitioners have been released from detention.   Petitioners have also argued that because they can be re-detained even after their release on bond, they are subject to the mootness exception for claims that are capable of repetition but evading review.   (Dkt. 27 at 9).   However, in light of the finding that the inherently transitory doctrine applies to Petitioners' claims, the Court need not address whether the capable of repetition yet evading review exception to mootness applies to the instant matter.

**C.**    **Jurisdiction Over RCC Detainees**

Respondents also argue that the Court does not have jurisdiction over any putative class members detained at the RCC, or over the subclass because Subclass Petitioner was detained at the RCC in Monroe, Louisiana, when the Petition was filed.   (Dkt. 22-1 at 19-23).   For the reasons that follow, the Court finds it does not presently have jurisdiction over the RCC detainees, including Subclass Petitioner.

The question of whether a district court has jurisdiction over a habeas petition "breaks down into two related subquestions.   First, who is the proper respondent to that petition?   And second, does the [Court] have jurisdiction over him or her?"   *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).   This Court, along with the majority of courts in this Circuit, has previously found a § 2241 proceeding brought by an immigration detainee challenging the proceedings used at his bond hearing is a "core" habeas proceedings, and that the proper respondent is the person with immediate custody over the person, *i.e.*, the warden of the facility where the person is detained.   *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 792 (W.D.N.Y. 2019); *see Rodriguez v. Barr*, No. 6:18-cv-06757-MAT, 2019 WL

2192516, at *3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention." (citing *Padilla*, 542 U.S. at 435 ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"))); *see also Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *26 (D. Conn. May 12, 2020) (holding dismissal of the § 2241 petition against the Director of the Bureau of Prisons was appropriate, finding "the Director is not a proper party in this case because he is not the immediate custodian of the Petitioners"); *Abraham v. Decker*, No. 18-CV-3481 (CBA), 2018 WL 3387695, at *2 (E.D.N.Y. July 12, 2018) ("[T]he Court chooses . . . to join the majority of district court opinions that have chosen to apply the Padilla framework to aliens in custody challenging their detention prior to deportation."); *Khemlal v. Shanahan*, No. 14 Civ. 5186, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014) ("The majority view in the Second Circuit requires the 'immediate custodian,' generally the prison warden, to be named as a respondent in 'core' immigration habeas proceedings—*i.e.*, those challenging present physical confinement." (quotation omitted)).

Petitioners argue that the immediate custodian rule set forth in *Padilla* does not apply to the Subclass Petitioner's and the proposed subclass's claims challenging the alleged "no bond" policy because "[t]he subclass . . . does not challenge the No Bond Policy under habeas; rather, it does so under the APA." (Dkt. 27 at 10).  However, Petitioners expressly ask the Court to "order[] individualized bond determinations" in connection with this claim. (Dkt. 15-1 at 16). As such, "Petitioners' argument that they are challenging the

legal process of the bond hearing, as opposed to the confinement that resulted from the legal insufficiency of the bond hearing, relies upon a false distinction.  Petitioners seek as relief a bond hearing at which Petitioner[s] can challenge [their] current detention." *Heller v. Barr*, No. 19 CIV. 4003 (ER), 2019 WL 2223183, at *2 (S.D.N.Y. May 22, 2019). Moreover, it is well-established that a claim under the APA challenging the procedures employed in detaining an individual "may be had in 'any applicable form of legal action, including actions for . . . writs of . . . habeas corpus, in a court of competent jurisdiction.'" *LaSorsa v. Spears*, 2 F. Supp. 2d 550, 556 (S.D.N.Y. 1998) (alterations in original) (quoting 5 U.S.C. § 703), *aff'd sub nom. Lasorsa v. Menifee*, 182 F.3d 900 (2d Cir. 1999); *see also* 5 U.S.C. § 703 (providing that judicial review of agency action under the APA may proceed by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus"); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 959 (S.D.N.Y. 2018) (granting petition for writ of habeas corpus because "Respondents have violated the APA and the Due Process Clause of the Fifth Amendment"), *appeal withdrawn*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018); *Putnam v. Winn*, 441 F. Supp. 2d 253, 256 (D. Mass. 2006) (finding the court had "habeas jurisdiction under § 2241" to consider the petitioner's claim that the Bureau of Prison's rule pursuant to which he was confined was "contrary to federal law under the APA"); *Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1383 (S.D. Fla. 2002) (considering claim that the government violated the APA in adopting policy regarding detention of arriving Haitian nationals under habeas jurisdiction because "because if the APA required notice-and-comment rulemaking for the policy pursuant to which Petitioners were held, their

detention could be 'in violation of . . . the laws . . . of the United States.'"  (quoting 28 U.S.C. § 2241(c)(3))), *aff'd sub nom. Moise v. Bulger*, 321 F.3d 1336 (11th Cir. 2003). Accordingly, Petitioners' "challenge regarding the sufficiency of the bond hearing does not transform [the] petition into a non-core challenge because the relief sought would still be a bond hearing, at which [they] can challenge [their] continued detention."  *Darboe v. Ahrendt*, 442 F. Supp. 3d 592, 594-95 (S.D.N.Y. 2020) (finding that "petition for a writ of habeas corpus and complaint for declaratory and injunctive relief pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act ('APA'), 5 U.S.C. § 701 et seq.; the Immigration and Nationality Act ('INA'), 8 U.S.C. § 1101 et seq.; and Article I, Section 9, Clause 2 of the U.S. Constitution" had to be heard in district of confinement because immediate custodian was only proper respondent); *see Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473, 474-75 (S.D.N.Y. 2018) (applying immediate custodian rule to § 2241 petition where "all of the statutory and constitutional violations that [the petitioner] alleges stem from his detention").

Based on this analysis, the Court finds that the proper respondent/defendant for Subclass Petitioner is the warden of the RCC.  While the warden of the BFDF (Jeffrey Searls) is a party to this lawsuit, the warden of the RCC is not.  Because the warden of RCC has not been named as a respondent nor served with the Petition, the Court does not have jurisdiction over the claims of the Subclass Petitioner.  *See Freeman v. NYS DOCCS*, No. 6:19-CV-06633-FPG, 2020 WL 1333503, at *5 (W.D.N.Y. Mar. 23, 2020) ("[I]n order for a court to entertain a habeas corpus action, it must have jurisdiction over the petitioner's custodian." (citation omitted)); *DeSousa v. Abrams*, 467 F. Supp. 511, 512 (E.D.N.Y.

1979) ("[I]t has been repeatedly held that failure to name as respondent the party having custody of the applicant is fatal to the right to a writ of habeas corpus, and that a federal court has no jurisdiction to consider such an action." (citations omitted)).  Moreover, because the Court lacks jurisdiction over Subclass Petitioner's claims and because Class Petitioner is not a member of the proposed subclass, the Court must dismiss any claims asserted on behalf of the proposed subclass.  *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc*., 721 F.3d 95, 112 (2d Cir. 2013) (explaining that where class-based relief is sought, "there must be a named plaintiff sufficient to establish jurisdiction over each claim advanced"); *see also Jones v. Goord*, 435 F. Supp. 2d 221, 233 (S.D.N.Y. 2006) (dismissing subclass claims for "lack of named plaintiffs").

As to the claims of members of the proposed Main Class who are detained at the RCC, Petitioners rely on *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974), in support of their position that the Court can assert jurisdiction over members of a habeas class detained outside this District.  (Dkt. 27 at 10-11).  *Preiser* was a class action lawsuit wherein the class representatives were detained at a facility within the Southern District of New York, but some members of the class were not confined or convicted in the Southern District.  *Id.* at 1127.  The *Preiser* court held that because the representatives of the class "could properly have proceeded individually," the district court had jurisdiction over the entire class.  *Id.* at 1129.

The Court does not find *Preiser* dispositive of its present jurisdictional finding.  *Preiser* predates *Padilla* and did not specifically address whether the wardens of the different facilities were necessary parties, whereas the Court has found here that the

immediate custodian must be a respondent.  To be clear, the Court is not reaching the issue of whether it could exercise jurisdiction over the warden of the RCC based on *Preiser*.  *See id.* at 1128 ("So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' (for purposes of § 2241(a)) . . ., even if the prisoner himself is confined outside the court's territorial jurisdiction." (alteration in original) (quoting *Braden v. 30th Judicial Court of Ky.*, 410 U.S. 484, 495 (1973))).  The warden of the RCC has not been named or served, the issue of the Court's authority to exercise jurisdiction over him has not been fully briefed, and the Court will not issue an advisory opinion as to whether it has jurisdiction over a party who has not yet been named in this lawsuit.  In other words, regardless of whether the Court could potentially have jurisdiction over the claims of individuals detained at the RCC, including Subclass Petitioner, it does not have such jurisdiction at this time and on the current record.

Accordingly, Respondents' motion to dismiss is granted as to all claims by the RCC detainees, including Subclass Petitioner, and consequently including all claims asserted on behalf of the proposed subclass.  The dismissal is without prejudice.  Additionally, because the only claims presently remaining before the Court are the "core" habeas claims of Class Petitioner and the remaining putative class members, all Respondents aside from Jeffrey Searls are also dismissed without prejudice.[2]  *See Rodriguez*, 2019 WL 2192516, at *3.

---

[2]      In light of the dismissal of Subclass Petitioner and all Respondents aside from Jeffrey Searls, the Court will only refer to Class Petitioner and respondent Jeffrey Searls ("Respondent") for the remainder of this Decision and Order.

### D.   Availability of Class-Wide Relief

Respondent next argues that 8 U.S.C. § 1252(f)(1) prevents this Court from ordering class-wide relief.  Section 1252(f)(1) states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provision of part IV of this subchapter. . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  As the Supreme Court has explained, "[b]y its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief.  It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999).

As a preliminary matter, the Court finds that § 1252(f)(1) does not bar class-wide *declaratory* relief.  A majority of the Supreme Court justices have found that district courts have jurisdiction to entertain requests for class-wide declaratory relief despite § 1252(f)(1).  *Preap*, 139 S. Ct. at 962 (plurality opinion of Alito, J. joined by Roberts, J., and Kavanaugh, J.); *Jennings*, 138 S. Ct. at 875 (dissent by Breyer, J., joined by Ginsburg, J., and Sotomayor, J.); *see also Vazquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2019 WL 4784950, at *9 (S.D.N.Y. Sept. 30, 2019) (holding "[s]ection 1252(f)(1) does not strip this Court of jurisdiction to issue declaratory relief on a classwide basis" in the wake of *Preap*); *see also Make the Road N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) (same); *Reid v. Donelan*, 390 F. Supp. 3d 201, 226 (D. Mass. 2019) (holding § 1252(f)(1) does not bar

declaratory relief, noting that "[t]hree justices in *Preap* . . . stated that a district court has jurisdiction to entertain a request for declaratory relief despite § 1252(f)(1), adding their voices to the three other justices who said the same in dissent in *Jennings*" (citation omitted)).   Accordingly, since Class Petitioner seeks declaratory relief in addition to injunctive relief, Respondent's motion to dismiss based on § 1252(f)(1) must be denied.

Moreover, the Court concludes that § 1252(f)(1) does not bar the injunctive relief sought by Class Petitioner.  The dispositive inquiry into whether class-wide injunctive relief is available hinges on whether Petitioners' requested relief would "enjoin or restrain the operation of" § 1226(a).  As the court explained in *Vazquez Perez*, "enjoin" and "restrain" logically "refer respectively to permanent and temporary injunctive relief."  2019 WL 4784950, at *5 (citing *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003)).   "'Operation' is, in turn, defined as a 'method or manner of functioning.'"  *Id.* (quoting Operation, Merriam-Webster Online Dictionary (Aug. 30, 2019), https://www.merriam-webster.com/dictionary/operation).  The question is thus whether "the temporary injunctive relief [the petitioners seek] on a classwide basis would enjoin or restrain the method or manner of functioning of [§ 1226(a)]."  *Id.*

Petitioners request that the Court order all class members be provided with a bond hearing at which the IJ imposes on the government the burden to prove by clear and convincing evidence that the person detained is a danger to the community or a flight risk, makes an individualized assessment of each case, and, if setting bond, considers the

person's ability to pay and whether other alternatives to detention are appropriate. (Dkt. 1 at 18-19; *see* Dkt. 15-26).

Section 1226(a) provides that the Attorney General "may continue to detain the arrested alien" or "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. § 1226(a)(1)-(2). The plain language of § 1226(a) "does not provide the procedural requirements for bond hearings. Instead, the procedural rules followed by immigration courts come from BIA precedential decisions, which are not construing language in the statute." *Brito v. Barr*, 415 F. Supp. 3d 258, 269 (D. Mass. 2019) (citations omitted). Indeed, the Supreme Court in *Jennings* recognized that § 1226(a) does not speak to the procedural requirements of bond hearings. 138 S. Ct. at 847 (holding "[n]othing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on . . . bond'—even remotely supports" placing the burden on the government to prove by clear and convincing evidence that the alien's continued detention is necessary).

Other courts have found that § 1252(f)(1) does not bar similar relief because "the requested injunction requires the Government to follow certain constitutionally mandated due process procedures at bond hearings, but it does not mandate the release of any class members nor does it allow an opportunity for release not already provided by the statute." *Brito*, 415 F. Supp. 3d at 269; *Padilla v. U.S. Immigr. & Customs Enf't*, 354 F. Supp. 3d 1218, 1231-32 (W.D. Wash. 2018) (explaining that by asking for procedural protections at bond hearings, the plaintiffs were "not asking the Court to 'enjoin or restrain *the operation of the provisions*' of any statute, but instead s[ought] an injunction against actions and

policies that violate . . . associated constitutional protections"), *reconsideration denied*, No. C18-928 MJP, 2019 WL 7486849 (W.D. Wash. Feb. 12, 2019).  The Court is persuaded by this reasoning and finds that if Petitioners receive their requested relief, the government still "may continue to detain; and may release the alien on . . . bond . . . [or] conditional parole," 8 U.S.C. § 1226(a), and thus the statute's operation would not be enjoined or restrained.

Respondent does not point to any specific portion of § 1226(a) that the requested relief would enjoin or restrain.  Instead, Respondent argues the relief would restrict the government's "broad discretion" to detain or release aliens.  (Dkt. 29 at 8).  However, in making this argument, Respondent ignores the plain language of § 1252(f)(1).  Section 1252(f)(1) strips the Court of jurisdiction to entertain class action lawsuits that "enjoin or restrain the operation of the *provision*"—in this case, § 1226(a)—not the operation of the government's authority or discretion.[3]

*Vazquez Perez*, on which Respondent relies, dealt with an entirely separate statute and is distinguishable.  There, the court found that it did not have jurisdiction to enter an injunction "order[ing] that the government must hold initial master calendar hearings for each member of the putative class within 7 to 10 days of arrest by Immigration and Customs

---

[3]     For similar reasons, the Court does not find persuasive the Sixth Circuit's holding in *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), a 2-1 decision which found that a district court does not have jurisdiction to enter class-wide injunctive relief requiring that the government provide certain procedural protections at bond hearings. *Id.* at 879-80. The *Hamama* majority found that the procedural requirements place "limitations on what the government can and cannot do." *Id.* at 880.  However, as discussed above, the jurisdiction-stripping provision of § 1252(f)(1) is not so broad as to include all actions by the government, only those specifically spoken to in the statute.

Enforcement."  2019 WL 4784950, at *4.  The statute at issue "provide[d] that an initial master calendar 'hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear.'"  *Id.* at *6 (quoting 8 U.S.C. § 1229(b)(1)).  The court explained that "this provision sets a time before which the initial master calendar hearing may not be scheduled but provides no time beyond which the initial master calendar hearing cannot be scheduled.  In other words, it prescribes a floor but no ceiling with respect to the timing of initial master calendar hearings."  *Id.*  The court reasoned that "[b]ecause Congress, in its judgment, chose not to mandate a statutory ceiling" even though it had prescribed a floor, an injunction imposing a statutory ceiling "where the statute is silent would displace that judgment in a way that would enjoin or restrain the method or manner of Section 1229(b)'s functioning."  *Id.* (emphasis omitted).  Thus, the court found that § 1252(f)(1) deprived it "of jurisdiction to issue the injunction."  *Id.*

In contrast, in the instant matter Congress has not spoken *at all* to the procedural requirements of bond hearings pursuant to § 1226(a).  A scenario analogous to that in *Vazquez Perez* would be present here if, for example, § 1226(a) prescribed some procedures that must be used at bond hearings but was silent on others.  But as explained above, § 1226(a) "does not provide [any] procedural requirements for bond hearings," *Brito*, 415 F. Supp. 3d at 269, only that a person detained pursuant to it is entitled to one.

For all these reasons, this Court finds that Petitioners' requested injunctive relief does not enjoin or restrain the operation of § 1226(a), and as a result § 1252(f)(1) does not strip this Court of jurisdiction to order the requested relief on a class-wide basis.

- 25 -

**E.    Jurisdiction to Review Bond Determinations**

Respondent next contends that this Court may not review discretionary bond determinations made by IJs.  Class Petitioner responds that he is not challenging the IJs' exercise of discretion but rather is challenging *how* the decisions are made—*i.e.*, what factors the IJs must consider in reaching a decision.  Put another way, Class Petitioner is raising legal, not factual challenges.  The Court agrees.

Title 8 U.S.C. § 1226(e)—which applies to judicial review of action taken under § 1226(a)—provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Similarly, 8 U.S.C. § 1252(a)(2)(B) states, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]

Thus, a district court "cannot review custody determinations that an IJ, pursuant to her delegated authority, has made regarding a noncitizen's detention or release."  *Dubon Miranda*, 2020 WL 2794488, at *7.

Here, however, Class Petitioner is not challenging the IJ's weighing of evidence and factual findings.  He is challenging the procedures used during § 1226(a) bond hearings.  *See id.*  Thus, "[t]hese claims are outside the scope of the jurisdiction-stripping provisions

of §§ 1226(e) and 1252(a)(2)(B)." *Id.*; *see also Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *5 (W.D.N.Y. Aug. 16, 2019) ("Here, [the petitioner] is not challenging the IJ's discretionary decision to keep him in detention.  Instead, he is arguing that the immigration bond system, in which aliens detained pursuant to § 1226(a) must bear the burden of proving they are not dangerous and are not flight risks, violates the Due Process Clause of the Fifth Amendment.  'This type of constitutional claim falls outside of the scope of § 1226(e) because it is not a matter of the IJ's discretionary judgment.'" (quoting *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 689 (D. Mass. 2018) (internal quotation marks omitted))).[4]

## II.  Motion to Dismiss for Failure to State a Claim

### A.  Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all

---

[4]     The parties also dispute whether 5 U.S.C. § 701 bars the APA claims.  However, the Petition was not clear as to what specific conduct by Respondents allegedly violated the APA.  (*See* Dkt. 1 at ¶ 78 ("The respondents' actions violate the Administrative Procedure Act.")).  In their briefs, Petitioners discussed the APA claim solely as it related to the claims of Subclass Petitioner (*see, e.g.*, Dkt. 27 at 28-30), and did not address any APA claim alleged by Class Petitioner.  The Court further does not discern from the face of the Petition any viable APA claim by Class Petitioner.  Accordingly, to the extent Class Petitioner purports to allege an APA claim, it is dismissed without prejudice, and the Court need not reach the issue of whether 5 U.S.C. § 701 bars the APA claims.

reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. The 8 U.S.C. § 1226(a) Constitutional Allegations Are Sufficient

Class Petitioner argues that the Due Process Clause requires the government to bear the burden of proof at § 1226(a) bond hearings and the IJ to consider non-bond alternatives to detention or, if setting a bond, ability to pay. (*See* Dkt. 27 at 18). Respondent counters that the current procedures used at § 1226(a) hearings are constitutionally sufficient, and thus, Petitioners have failed to state a claim on which relief may be granted. (*See* Dkt. 22-1

- 28 -

at 27).  For the reasons that follow, this Court finds that Class Petitioner states a claim for the additional procedures requested at § 1226(a) bond hearings.

As explained above, § 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  The statute further states that the Attorney General "may continue to detain the arrested alien; and . . . may release the alien on[ ] bond . . . or . . .  conditional parole."  *Id.*  The United States Department of Homeland Security ("DHS") has promulgated regulations instructing that "[t]he DHS district director makes the initial custody determination; thereafter, the alien has the right to appeal an adverse decision to an IJ, and then to the BIA."  *Aparicio-Villatoro*, 2019 WL 3859013, at *4 (citing 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1), (3)).  Section "1226(a) is silent on the issues of which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden, [but] the BIA has interpreted § 1226(a) to place '[t]he burden . . . on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond.'"  *Id.* (citation omitted) (quoting *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted).  "When government action depriving a person of

life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id*. "This requirement has traditionally been referred to as 'procedural' due process." *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]." *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration,

[permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

"[A] growing chorus of district courts have concluded that due process requires that the government bear the burden of proof at § 1226(a) bond hearings," *Dubon Miranda*, 2020 WL 2794488, at *8 (internal quotation marks omitted), including this Court, *see Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019), and "[m]yriad courts in this Circuit," *Coronel v. Decker*, No. 20-cv-2472, 2020 WL 1487274, at *6 (S.D.N.Y. Mar. 27, 2020) (collecting cases); *see, e.g.*, *Arellano v. Sessions*, No. 18-cv-06625-MAT, 2019 WL 3387210, at *11 (W.D.N.Y. July 26, 2019); *Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[E]very court to have considered the constitutional issue presented in this case has agreed . . . [that] under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)."), *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019); *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *4 (S.D.N.Y. Nov. 14, 2018) ("The Court has reviewed and is persuaded by recent decisions within and outside of this district which hold that due process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard at an immigration detainee's bond hearing." (quotation and alteration omitted)). *But see Lopez v. Barr*, No. 19-CV-1232 (JLS), 2020 WL 2059789, at *5 (W.D.N.Y. Apr. 29, 2020) (finding that Due Process does not require a hearing with the burden on the government for individuals detained under § 1226(a) even if detention has become unreasonably prolonged). The Court reaffirms its previous finding that Due Process requires the burden

- 31 -

of proof to be on the government at a bond hearing involving an individual detained under § 1226(a).

This Court, along with a number of other courts, has also found that Due Process requires IJs to consider ability to pay and alternative conditions of release in setting bond. *See, e.g.*, *Dubon Miranda*, 2020 WL 2794488, at \*10 (explaining that "when IJs are not required to consider ability to pay or alternative conditions of release, a noncitizen otherwise eligible for release may end up detained solely because of her financial circumstances"); *Alfaro v. Barr*, 426 F. Supp. 3d 6, 12 (W.D.N.Y. 2019) ("Additionally, the Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond."); *Brito*, 415 F. Supp. 3d at 263 (finding that "due process requires an immigration court consider both an alien's ability to pay in setting the bond amount and alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances").

For all these reasons, this Court finds Class Petitioner has stated a claim that his Due Process rights have been violated.  Accordingly, Respondent's motion to dismiss the habeas petition as to Class Petitioner and the putative class members detained at the BFDF is denied.

## C.   The INA Claims Are Sufficient in Part

Class Petitioner argues that the INA requires IJs to consider ability to pay and alternative conditions of release, and that the refusal of the Buffalo and Batavia IJs to acknowledge they may consider alternative conditions of release also violates the INA.

(Dkt. 27 at 23-25).  Respondent argues that the INA and its regulations are silent as to what factors should be considered by an IJ at a § 1226(a) bond hearing, and that the procedures used at bond hearings are a reasonable interpretation of the INA.  (Dkt. 22-1 at 34-35; Dkt. 29 at 11-12).

As discussed at length above, the Court agrees with Respondent that § 1226(a) does not speak to what factors an IJ must consider at a bond hearing.  Section 1226(a) states that the government "*may* continue to detain the arrested alien," and "*may* release the alien" on bond or conditional parole.  8 U.S.C. § 1226(a) (emphasis added).  In other words, the plain language of 8 U.S.C. § 1226(a) allows IJs to consider alternative conditions of release and bond, but does not require that they do so or otherwise prescribe what procedures should be used at a bond hearing.

Additionally, as Class Petitioner concedes, nothing in the text of § 1226(a) requires that an IJ consider ability to pay when setting bond.  (*See* Dkt. 27 at 23).  Nor does BIA precedent implement any such requirement.  *See In re Guerra*, 24 I. & N. at 40 (providing that an IJ may look to a number of factors when determining the amount of bond, none of which include ability to pay).  Instead, Class Petitioner argues that a logical reading of the text and structure of § 1226(a) leads to the conclusion that the statute requires IJs to consider a person's ability to pay when setting bond because the purpose of bond is to effectuate release, and fulfilling that purpose requires consideration of ability to pay.  (Dkt. 27 at 23-24).  However, BIA precedent holds that the purpose of bond is to ensure the presence of an alien at removal proceedings upon release, *see Matter of Urena*, 25 I. & N. 140, 142 (BIA 2009), an inquiry that does not necessarily require consideration of ability

to pay.   Particularly in light of the holding in *Jennings* that courts should not read procedural requirements into § 1226(a) "that go well beyond" those "established by existing regulations," 138 S. Ct. at 847-48, the Court finds that § 1226(a) does not require IJs to consider ability to pay and alternative conditions of release in setting bond, although, as discussed above, the Constitution does.

The Court does find, however, that Class Petitioner has stated a claim for violation of the INA on different grounds.   Class Petitioner alleges that at his bond hearing, the IJ stated she *could not* consider alternatives to money bond and set his bond at $8,000.   (Dkt. 1 at ¶ 45).   As previously noted, § 1226(a) explicitly provides that a detainee may be released on conditional bond or parole, *see* 8 U.S.C. § 1226(a)(2), and BIA precedent confirms that IJs have authority to place conditions on release, *see Matter of Garcia-Garcia*, 25 I. & N. 93, 98 (BIA 2009) ("[S]ection 236(a)(2)(A) of the Act clearly gives the Attorney General authority to place conditions on an alien's release from custody when setting a monetary bond of at least $1,500."); *see also Rivera v. Holder*, 307 F.R.D. 539, 553 (W.D. Wash. 2015) (holding "§ 1226(a) unambiguously states that an IJ may consider conditions for release beyond a monetary bond").   Accordingly, Class Petitioner's claim that the IJ misinterpreted the INA by stating she could not consider alternative conditions of release may proceed, but his claims that the INA required the IJ to consider those alternatives or his ability to pay in setting bond are dismissed.

### D.     The No-Bond Policy Subclass Claims

As discussed above, the Court has found it lacks jurisdiction over Subclass Petitioner's claims, including the claims related to the No-Bond Policy. Accordingly, the Court does not address the merits of the No Bond Policy claims at this time.

### III.     Motion for Class Certification

On March 11, 2020, before applying for a preliminary injunction, Class Petitioner moved to certify the class, seeking certification of the following:

> All individuals currently detained under Section 1226(a) who have had or will have a custody hearing before the Batavia or Buffalo Immigration Courts.

(Dkt. 3 at 15).[5] For the reasons set forth below, the Court grants the motion in part and certifies a more narrowly defined class, denies the motion in part, and reserves decision in part.

### A.     Rule 23(a) Requirements

This Court finds that Class Petitioner has satisfied the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification regarding the class-wide claims: "numerosity, commonality, typicality, and adequacy of representation." *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 80 (2d Cir. 2015).

---

[5]     Petitioners also moved to certify a subclass, defined as "All individuals currently detained under Section 1226(a) who have had or will have a custody hearing before the Batavia or Buffalo Immigration Courts, in front of either Immigration Judge Philip Montante or Immigration Judge Mary Baumgarten." (Dkt. 3 at 15). However, because the Court has dismissed the subclass claims without prejudice, the motion for class certification as to the subclass is denied without prejudice as moot.

### 1. **Numerosity**

"For a court to certify a class, Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members 'impracticable.'" *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  "Impracticability does not mean impossibility, but rather difficulty or inconvenience." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998).  "'There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty or more members.'" *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012) (quoting *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001)).

> [T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.), *as amended* (Nov. 12, 2014).

The Court concludes that Class Petitioner has demonstrated sufficient numerosity. In the motion to certify, Class Petitioner states that the Batavia Immigration Court heard 2,796 custody hearings between March 1, 2019, and January 31, 2020.  (Dkt. 3 at 17).  It is not clear how many of those hearings were for individuals detained at the BFDF pursuant to §1226(a).  However, in March 2020 when the Petition was filed, the BFDF was housing 374 detainees and has a normal capacity of 650 detainees, *see* Dec. of Captain Abelardo

Montalvo, M.D., *Jones v. Wolf*, No. 1:20-cv-00361-LJV, Dkt. 42-1 at ¶ 13 (W.D.N.Y. Mar.

30, 2020); *see also* Nick Pippa, *Detainees at Batavia ICE Facility Say They Are Sick and*

*Haven't Been Tested for COVID-19*, WBFO NPR (Apr. 8, 2020),

https://news.wbfo.org/post/detainees-batavia-ice-facility-say-they-are-sick-and-havent-

been-tested-covid-19, and it is likely that a significant number are detained pursuant to

§ 1226(a), which is the default statutory detention provision (*see* Dkt. 3 at 17); *see*

*generally* § 1226(a).   Additionally, "the Second Circuit has relaxed the numerosity

requirement where the putative class seeks injunctive and declaratory relief pursuant to

Rule 23(b)(2)."   *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (citing

*Robidoux*, 987 F.2d at 935-36); *see Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y.

1986) (determining that numerosity was satisfied in an action involving "present and future

tenants of the New York City Housing Authority," even though only 16 class members

were identified because of "the fluid composition of the public housing population").

Moreover, Respondents have not disputed that the proposed class meets the numerosity

requirement.  (*See generally* Dkt. 23).

Therefore, the Court is satisfied that Class Petitioner has satisfied the numerosity

requirement.

### 2.   <u>Commonality</u>

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  That requirement is satisfied where even a single issue of law or

fact is common to the class, and where a classwide proceeding is capable of "generat[ing]

common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 349-50 (2011). "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

Respondent contends that Class Petitioner's claims require individualized factual determinations and Class Petitioner cannot establish that common facts apply to each purported class member. (*Id.* at 24-25). That argument misconstrues the relief sought by Class Petitioner, which is not an individualized determination as to whether to grant bond, but rather a request that certain procedural protections be applied across-the-board when making those individualized determinations. *See Wal-Mart Stores, Inc. v. Dukes*, 131 U.S. 338, 349-50 (2011) (commonality is satisfied where even a single issue of law or fact is common to the class, and where a classwide proceeding is capable of "generat[ing] common answers apt to drive the resolution of the litigation"); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."); *Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 576 (N.D.N.Y. 2017) (typicality requirement satisfied because the claims of the class representatives and the members of the class and subclass were "based on the common

application of certain challenged policies." (citing *Sykes v. Mel Harris and Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012))).   Accordingly, the Court finds the commonality requirement has been met.

### 3.   Typicality

Rule 23(a) also requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).   That requirement is satisfied where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented[.]"   *Robidoux*, 987 F.2d at 936-37; *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir. 1986) (typicality requirement satisfied where evidence indicated that employer discriminated "*in the same general fashion*" against class representatives and other members of class).   "[M]inor variations in the fact patterns underlying individual claims" do not vitiate typicality.   *Robidoux*, 987 F.2d at 937.   In *V.W.*, the court found that the typicality requirement was satisfied because the claims of the class representatives and the members of the class and subclass were "based on the common application of certain challenged policies."   236 F. Supp. 3d at 576 (citing *Sykes*, 285 F.R.D. at 287).

Respondent contends that Class Petitioner's claims are not typical of the putative class because he was released on bond whereas he alleges that his claims are typical because he was unable to pay the $8,000 bond imposed on him by the IJ.   (Dkt. 23 at 21-22).   "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."   *Robidoux*, 987 F.2d at 936.   Although Class

Petitioner was eventually released on bond after money was donated to his cause by a non-profit, Respondent overlooks that Class Petitioner was initially unable to pay the bond amount set for him by the IJ and remained detained for five weeks after his bond hearing. (Dkt. 15-10 at ¶¶ 2-4).  Additionally, the unofficial transcript of Class Petitioner's bond hearing shows no indication that the IJ considered Class Petitioner's ability to pay when setting his bond amount (Dkt. 22-2 at 8), nor does Respondent contend that the IJ anticipated that a non-profit would be able to fund Class Petitioner's bond.  Moreover, the inherently transitory doctrine, which as previously discussed applies to Class Petitioner, means that his claims "relate back" to the filing of the Petition. *See Symczyk*, 569 U.S. at 76; *Salazar*, 822 F.3d at 73 ("The exception to the mootness doctrine for 'inherently transitory' claims asserted by the named plaintiff(s) in a class action allows such claims to 'relate back' to the time of the filing of the complaint with class allegations.").  In other words, Class Petitioner's initial detention and inability to afford bond after the IJ set a bond amount that did not take into consideration his ability to pay makes Class Petitioner's claims typical of the class irrespective of whatever unanticipated fortunes he encountered at a later date.

Therefore, the Court finds that Class Petitioner's claims satisfy the typicality requirement.

### 4.  <u>Adequacy of Representation</u>

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d

Cir. 2006).   Respondent argues that Class Petitioner is not an adequate representative because he has been released on bond.[6]   (Dkt. 23 at 23-24).   According to Respondent, Class Petitioner will be unable to vigorously pursue the class claims because he does not possess the same interest as the putative class members and his incentive to pursue litigation is significantly weaker.   (*Id.*).

The individual and class claims, as discussed above, are readily susceptible to the inherently transitory exception to mootness doctrine, which only further buttresses the justification for class certification.   *See Wagafe v. Trump*, No. 17-CV-0094 (RAJ), 2017 WL 2671254, at *15 (W.D. Wash. June 21, 2017) ("[The d]efendants' argument that the mooting of named [p]laintiffs' claims requires a finding that they are inadequate representatives, thus defeating class certification, does not have the desired effect.   In fact, it counsels in favor of granting class certification."); *Goetz v. Crosson*, 728 F. Supp. 995, 1004 (S.D.N.Y. 1990) ("Were we not to certify this class, the claims asserted by the plaintiffs might be rendered moot prior to resolution.").

The principles underlying the inherently transitory doctrine suggest that substitution of a new class representative is not required, even when the individual claims are moot. *See White v. Mathews*, 559 F.2d 852, 857-58 (2d Cir. 1977) (permitting the class representative to continue litigating the class claims even after his individual claims were rendered moot); *In re Thornburgh*, 869 F.2d 1503, 1509 n.7 (D.C. Cir. 1989) (recognizing

---

[6]      Respondent also contends Class Petitioner lacks standing to represent the class because his claims are moot (Dkt. 23 at 18-19); however, the Court has already rejected these arguments as discussed above.

that "[s]ome courts . . . have permitted the original named plaintiffs to represent the class even after their own claims were mooted prior to certification," but suggesting "that such treatment is proper only in special circumstances, such as where the alleged law violation is capable of repetition, yet evading review").   The core rationale of the inherently transitory doctrine is that the viability of the class action should not be tied to the viability of individual claims that may be rendered moot prior to class certification due to their inherent fluidity.   Indeed, if the class is required to name a new representative every time an individually-named party is released from custody, there is nothing stopping Respondent from attempting to moot this case by targeting each class representative for release.  *See White*, 559 F.2d at 857; *Goetz*, 728 F. Supp. at 1004.

Therefore, even if Class Petitioner's individual claims are extinguished, he is still eligible to carry the mantle of class representative.  *See Monaco v. Stone*, 187 F.R.D. 50, 60 (E.D.N.Y. 1999) (applying the inherently transitory doctrine and stating that "plaintiff Gregory Monaco may still act as the named representative for the proposed plaintiff class despite the loss of his individual claims[, because a] named plaintiff may still litigate a class action despite the loss of their personal stake" (quoting *Geraghty*, 445 U.S. at 398)); *cf*. *Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir. 1980) (rejecting the argument that "the absence of any intervenor or substitute named plaintiff" would not moot the class claim because, among other things, *Geraghty* did not apply).

Respondent relies on *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010), where the court found inadequate representation because the named representative had already received injunctive relief and "would have little incentive to oppose or defend against injunctive

relief that went no further than the injunctions presently in place." *Id.* at 480.  However, *Brown* is inapposite because it does not consider, let alone apply, the inherently transitory doctrine.

For all these reasons, the Court concludes that "[t]he common legal questions that apply to the claims of all § 1226(a) detainees mean that the named [Petitioner] can adequately represent the interests of individuals who have already had a bond hearing with unconstitutional procedures as well as those who will have such a hearing in the future." *Brito*, 395 F. Supp. 3d at 148.

The Court also concludes that counsel in this case are capable of adequately representing the class.[7]  Respondent has not offered any reason why Class Petitioner's counsel are not adequate to represent the class, nor does it appear that he could.  Class Petitioner's counsel are experienced and competent.  Indeed, Class Petitioner's counsel are familiar with and experienced in litigating federal civil rights cases in general, as well as the immigration issues specific to this case.  (*See* Dkt. 19-2 at 1-2).  Class Petitioner's counsel have also clearly been in frequent communication with the detainees at the BFDF (*see* Dkt. 19-6; Dkt. 19-7; Dkt. 19-8; Dkt. 19-9; *see also* Dkt. 38; Dkt. 51-1), which demonstrates substantial investigative work in developing this case.  Furthermore, the

---

[7]     In the past, this analysis occurred under Rule 23(a)(4).  However, as a result of the 2003 amendments to the Federal Rules of Civil Procedure, the issue of the adequacy of class counsel is now guided by Rule 23(g).  Regardless, the analysis remains the same. *Kulig v. Midland Funding, LLC*, No. 13-CV-4175 (PKC), 2014 WL 5017817, at *2 (S.D.N.Y. Sept. 26, 2014) (citations omitted); *accord, e.g.*, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK)(AJP), 2017 WL 3608298, at *7 (S.D.N.Y. Aug. 22, 2017).

Court has had the benefit of reviewing counsel's arguments thus far, and finds that counsel have, without question, demonstrated qualified and experienced legal representation in this matter.

For all these reasons, the Court finds that Class Petitioner has satisfied the requirements of Rule 23(a).

**B.      Rule 23(b)(2) Requirements**

Class Petitioner also argues that he has met the Rule 23(b)(2) requirements. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal quotation marks and citation omitted). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of the types of actions authorized by Rule 23(b)(2). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

As discussed above, Class Petitioner has demonstrated deficiencies in the procedures employed by Respondents that "stem from central and systemic failures" and apply across-the-board to each putative class member. *See Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) ("Defendants further claim that due to the unique circumstances of each plaintiff's experience with the child welfare system, the defendants have not acted on grounds generally applicable to the class. We disagree. Insofar as the deficiencies of the child welfare system stem from central and systemic failures, the district court did not abuse its discretion in certifying a 23(b)(2) class at this stage of the litigation.").

However, regarding the claim for injunctive relief, Respondent correctly points out that the Court cannot resolve all of the claims of the proposed class with a single injunction. Class Petitioner requests relief for individuals "who have had or will have" a bond hearing before the Buffalo and Batavia immigration courts.  In other words, the "proposed class includes aliens who are seeking a second bond hearing after receiving a constitutionally deficient one." *Brito*, 395 F. Supp. 3d at 148.  In cases where a petitioner detained pursuant to § 1226(a) has already received a bond hearing, albeit one where unconstitutional procedures were used, this Court has required a showing of prejudice before ordering a new bond hearing.  *See, e.g.*, *Adejola*, 408 F. Supp. 3d at 287; *Alfaro*, 426 F. Supp. 3d at 12.  "The Court cannot issue a unitary injunction ordering new bond hearings for them without delving into their individual criminal histories and personal characteristics to determine whether they suffered prejudice from the errors at their first hearings."  *Brito*, 395 F. Supp. 3d at 148.  Stated differently, in the case of detainees who have already received a bond hearing, the "flexible" nature of due process requires an individualized determination by a court as to whether they are entitled to another one.  *See Jennings*, 138 S. Ct. at 852.

Class Petitioner argues that if the Court finds a statutory or *Accardi*[8] violation, no showing of prejudice would be necessary because only the due process claim requires an individualized showing.  Although as discussed above the Court finds that Class Petitioner

---

[8]     The *Accardi* Doctrine is "the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."  *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991).

has stated an INA claim based on his allegations that the IJ presiding over his bond hearing represented she could not consider alternative conditions of release, he has not shown that the putative class members were also subject to that alleged conduct.

That does not mean, however, that the Court is unable to certify, for purposes of injunctive relief, a class of individuals who have not yet received a bond hearing.  "For aliens yet to have a bond hearing, their individual circumstances are irrelevant to determining what procedures due process mandates, and the Court can issue an injunction requiring the Government to implement these procedures for their bond hearings." *Brito*, 395 F. Supp. 3d at 149; *Reid v. Donelan*, 2 F. Supp. 3d 38, 44 (D. Mass. 2014) ("The premise that a due process violation is not grounds for *reversal* absent a showing of that degree of prejudice has no bearing on a plaintiff's right to seek to enjoin due process violations from occurring in the first instance." (quoting *De Abadia–Peixoto v. U.S. Dep't of Homeland Sec.*, 277 F.R.D. 572, 575 (N.D. Cal. 2011))).  Additionally, "[t]he Court has authority *sua sponte* to modify a proposed class definition."  *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015); *see* Fed. R. Civ. P. 23(c)(4)-(5).

Accordingly, the Court grants class certification to the following individuals (hereinafter the "Pre-Hearing Class"):  All individuals currently detained at the BFDF under § 1226(a) who will have a custody hearing before the Batavia or Buffalo Immigration Courts.

With regards to the members of the proposed class who have already had a bond hearing, the Court does not at this time decide whether it would be appropriate to certify a separate class of those individuals for purposes of declaratory relief, although it notes that

at least one other court has done so under similar circumstances. *See Brito*, 395 F. Supp. 3d at 148-49 ("[T]he Court can issue a declaratory judgment explaining the procedures due process requires at a § 1226(a) bond hearing and each individual's entitlement to a new bond hearing in accordance with those procedures if he can show prejudice via an individual habeas petition. This single declaration would address the rights of all aliens who have already had a bond hearing subject to unconstitutional procedures." (citations omitted)). The issue has not yet been fully briefed, and certification of this potential class need not be addressed for purposes of the preliminary injunction motion. Therefore, the Court reserves decision as to whether it would be appropriate to certify a separate class for purposes of declaratory relief that includes individuals currently detained at the BFDF under § 1226(a) who have already had a custody hearing before the Batavia or Buffalo Immigration Courts ("Putative Post-Hearing Class").[9]

## IV.    **Motion for a Preliminary Injunction**

As a preliminary matter, because as discussed above the Court finds that members of the Putative Post-Hearing Class must make an individualized showing of prejudice

---

[9]     The Court also reiterates that Class Petitioner is an appropriate class representative for the Pre-Hearing Class and the Putative Post-Hearing Class. Although Petitioner is no longer detained, he has been in the position of the members of both the Pre-Hearing Class and the Putative Post-Hearing Class, and as discussed at length above, the principles underlying the inherently transitory doctrine support Class Petitioner continuing to serve as a class representative even if his individual claims are moot. *See White*, 559 F.2d at 857; *Goetz*, 728 F. Supp. at 1004; *Monaco*, 187 F.R.D. at 60. This principle applies with particular force for the Pre-Hearing Class because of the difficulties associated with not only finding an individual detained at the BFDF pursuant to § 1226(a) who has not yet received a bond hearing, but with making the arrangements to recruit and name that person as a class representative in the few days before the bond hearing goes forward.

before receiving a new bond hearing, the Court denies the motion for preliminary injunction as to those individuals.  Additionally, because the claims of the subclass have been dismissed at this time, the Court denies the motion regarding those claims as moot.  Therefore, the only claims remaining to address in the preliminary injunction motion are the constitutional claims of the Pre-Hearing Class.  The Court does so below.

### A.    Legal Standard

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Normally, the purpose of a preliminary injunction is to maintain the status quo ante pending a full hearing on the merits.  Occasionally, however, the grant of injunctive relief will change the positions of the parties as it existed prior to the grant."  *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) (internal citations omitted), *overruled on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  "A higher standard applies . . . if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits."  *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *adopted*, No. 00 CIV. 3972 (VM), 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000*), aff'd*, 18 F. App'x 35 (2d Cir. 2001).  The Second Circuit has "held that a mandatory injunction should issue only upon a clear showing that the moving

party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (internal quotation marks and citation omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, and "is one of the most drastic tools in the arsenal of judicial remedies," *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (quotation omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction[.]" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)).

## B.   <u>Irreparable Harm</u>

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation omitted). "Thus, if a party fails to show irreparable harm, a court need not even address the remaining elements of the test." *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quotations omitted). Additionally, "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

Because this case governs whether individuals are detained or released, there would clearly be irreparable harm in not granting preliminary relief to the Pre-Hearing Class. *See Dubon Miranda*, 2020 WL 2794488, at *12 ("The deprivation of a constitutional right, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Brito*, 415 F. Supp. 3d at 270 (explaining that in the context of a class of individuals detained pursuant to § 1226(a), "who have no or little criminal history," there is a risk of irreparable harm because the class members "face a loss of their liberty by incarceration in jail for months and sometimes years"); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) ("[I]t follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that members of the plaintiff class will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that Petitioners have also carried their burden as to irreparable harm.").

Accordingly, the Court finds that Class Petitioner and the Pre-Hearing Class "have shown irreparable harm on the basis of their continued detention pursuant to a bond hearing that was likely constitutionally deficient." *Dubon Miranda*, 2020 WL 2794488, at *13.

## C.   <u>Likelihood of Success on the Merits</u>

With regard to the constitutional claims of the Pre-Hearing Class, as explained above this Court agrees with the majority of district courts in this Circuit that "have found that [the current § 1226(a) bond hearing] procedures violate the Fifth Amendment's due process guarantee, ordered the Government to bear the burden by clear and convincing evidence, and directed immigration judges to consider alternatives to detention." *See*

*Coronel*, 2020 WL 1487274, at *6 (collecting cases).  Additionally, BIA precedent makes it clear that an IJ has authority to consider alternative conditions of release when setting bond.  *See Matter of Garcia-Garcia*, 25 I. & N. at 98.  Accordingly, the Court finds that Class Petitioner is very likely to succeed on the merits of the Pre-Hearing Class's claims.

### D.   **Balance of the Equities and the Public Interest**

Respondent argues that his "interests in maintaining the existing procedures for bond hearings under § 1226(a) are . . . legitimate and significant" and "outweigh [Class Petitioner's] asserted interests."  (Dkt. 24 at 28).  This Court disagrees.

As the court explained in *Dubon Miranda*:

> Despite the defendants' assertion to the contrary, the granting of a preliminary injunction does not seriously infringe on the government's interest in enforcing its immigration laws. . . . Rather, the requested injunction would simply require the government to provide the proposed class members with new bond hearings where additional procedures are observed.  While the court acknowledges this would impose costs on the government, "[f]aced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor."  *See Hernandez*, 872 F.3d at 996 (citation and quotation marks omitted).  Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)) (further citation omitted).

2020 WL 2794488, at *13.

In support of their argument to the contrary, Respondent first reiterates that the Class Petitioner is no longer detained.  (Dkt. 24 at 28).  But as explained above, this Court finds that Class Petitioner's claims are inherently transitory and therefore not moot.

Respondent next contends that the Pre-Hearing Class members "have not suffered a constitutional injury" because their detention has not yet become prolonged.  (*Id.* at 28-29).  But again, this Court has found that the Pre-Hearing Class is likely to succeed on the constitutional challenge to the § 1226(a) bond procedures.

Finally, Respondent claims that the Class's "requested relief appears to contradict the[] purported goal of ensuring individualized determinations at § 1226(a) bond hearings." (*Id.* at 29).  More specifically, Respondent explains, Class Petitioner "ask[s] this Court to require the Buffalo and Batavia Immigration Courts to provide the . . . class members with new bonds hearings within seven days of a Court order," which "would require IJs to hold potentially hundreds of bond hearings in a one-week period."  (*Id.*).  "Such a rushed process," Respondent says, "is not in the public interest as it would disrupt the orderly function of the immigration courts."  (*Id.*).

While seven days may not have been sufficient time for Respondent to provide bond hearings for "[a]ll individuals currently detained under 8 U.S.C. § 1226(a) [at the BFDF] who *have had* or will have a custody hearing before the Batavia or Buffalo Immigration Courts" (*see* Dkt. 1 at ¶ 62 (emphasis added)), the Court has only granted injunctive relief to the Pre-Hearing Class.  In other words, the government will only be required to change the procedural protections for bond hearings that it has already scheduled or will schedule in due course and is not at this time required to perform "hundreds of bond hearings" that it otherwise would not have held.

Accordingly, the Court grants the motion for preliminary injunction as to the Pre-Hearing Class.

## **ORDER**

For the reasons explained above, it is hereby

ORDERED that Respondents' motion to dismiss (Dkt. 22) is granted in part and denied in part: the claims of the Subclass Petitioner and the claims of the putative class and subclass members detained at the RCC are dismissed without prejudice, all Respondents aside from Jeffrey Searls are dismissed without prejudice, and Respondents' motion is denied as to Class Petitioner's due process claims and INA claim as articulated above; and it is further

ORDERED that Petitioners' motion for class certification (Dkt. 2) is granted in part and denied in part, and the Court otherwise reserves decision. Specifically, the Court certifies the Pre-Hearing Class, which is defined as follows:

> All individuals currently detained at the Buffalo Federal Detention Facility under § 1226(a) who will have a custody hearing before the Batavia or Buffalo Immigration Courts.

The motion is denied without prejudice as moot to the extent it seeks class certification regarding any putative class member detained at the RCC, including the claims of Subclass Petitioner. The Court reserves decision on whether it will certify the Putative Post-Hearing Class, and a separate Text Order shall be issued setting forth a briefing schedule on that aspect of the class certification motion; and it is further

ORDERED that Petitioners' motion for a preliminary injunction (Dkt. 15) is granted in part and denied in part. Specifically, the Court grants a preliminary injunction as to the constitutional claims of the Pre-Hearing Class and orders that all members of the Pre-Hearing Class must receive a bond hearing wherein the government bears the burden of

proving by clear and convincing evidence that the individual is a danger to the community or flight risk, and where the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay.  The Court otherwise denies the motion for a preliminary injunction, including to the extent relief is sought by the Putative Post-Hearing Class and the Subclass Petitioner; and it is further

ORDERED that the parties shall confer within seven days of the date of this Decision and Order to develop a plan for the following:

(1) Developing instructions to all IJs in Batavia and Buffalo Immigration Courts who conduct § 1226(a) bond hearings to inform them of the requirements of this Decision and Order; and

(2) Developing a notice, in English, Spanish, and any other language deemed appropriate by the parties, summarizing the requirements of this Decision and Order for distribution to the Pre-Hearing Class members; and it is further

ORDERED that within ten days, the parties shall provide a status report to the Court detailing the agreed-upon plan for the matters discussed above, after which the Court will, if necessary, issue an updated order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:       September 2, 2020
             Rochester, New York

- 54 -