UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUNIOR ONOSAMBA-OHINDO, on behalf of
himself and all others similarly situated,

                Petitioner/Plaintiff,

     v.

JEFFREY SEARLS, in his official capacity as
the Acting Administrator of the Buffalo Federal
Detention Facility,

                Respondent/Defendant.
_____

**DECISION AND ORDER**

1:20-CV-00290 EAW

## BACKGROUND

Petitioner/plaintiff Junior Onosamba-Ohindo ("Class Petitioner") and former petitioner/plaintiff Antonio Lopez Agustin ("Subclass Petitioner") (collectively "Petitioners") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a complaint for declaratory and injunctive relief, purportedly on behalf of themselves and all other persons similarly situated. (Dkt. 1 (the "petition")). Petitioners sought: class certification; a declaratory judgment that the "actions, practices, policies, and/or omissions" of defendants/respondents violate the Immigration and Nationality Act ("INA") and its implementing regulations, the Administrative Procedure Act, and the Fifth Amendment to the U.S. Constitution; a declaratory judgment that each class member is entitled to a custody hearing at which the government bears the burden to justify continued detention by proving by clear and convincing evidence that the detained individual is a

danger to others or a flight risk; and an order stating that each class member must be released unless provided with such a custody hearing. (*Id.* at 18-19).

In a Decision and Order dated September 2, 2020 (Dkt. 41) (the "September 2020 D&O")[1], the Court dismissed without prejudice the claims asserted by Subclass Petitioner and the proposed subclass members detained at Richwood Correctional Center and the claims asserted against all respondents/defendants with the exception of Jeffrey Searls ("Respondent"). (*Id.* at 15-20). The Court found that Class Petitioner stated a claim that the government is required by the Due Process Clause to bear the burden of proof at bond hearings held pursuant to 8 U.S.C. § 1226(a) and that the immigration judge ("IJ") must consider non-bond alternatives to detention, or if setting a bond, ability to pay. (*Id.* at 28-32). The Court rejected Class Petitioner's contention that § 1226(a) "require[s] [immigration judges] to consider ability to pay and alternative conditions of release in setting bond," but found that Class Petitioner had "stated a claim for violation of the INA on different grounds"—namely, that at his bond hearing, the IJ had stated that she could not consider alternatives to money bond. (*Id.* at 34). Accordingly, "Class Petitioner's claim that the IJ misinterpreted the INA by stating she could not consider alternative conditions of release" was allowed to proceed, but his claim "that the INA required the IJ to consider those alternatives or his ability to pay in setting bond" was dismissed. (*Id.*).

---

[1] Familiarity with the September 2020 D&O and all other prior proceedings in this matter is assumed for purposes of this Decision and Order. The Court has summarized the salient factual and procedural background for ease of reference.

The September 2020 D&O also granted in part, denied in part, and reserved decision in part on Petitioners' motion for class certification and certified a Pre-Hearing Class, defined as follows:

> All individuals currently detained at the Buffalo Federal Detention Facility under § 1226(a) who will have a custody hearing before the Batavia or Buffalo Immigration Courts.

(*Id.* at 35-47). The Court reserved decision on whether to certify a putative Post-Hearing Class of individuals who had already had a custody hearing before the Batavia or Buffalo Immigration Courts. (*Id* at 46-47). Finally, the Court granted in part and denied in part Petitioners' motion for a preliminary injunction. (*Id.* at 47-52). Specifically, the Court granted a preliminary injunction as to the constitutional claims of the Pre-Hearing Class and ordered that all members of the Pre-Hearing Class must receive a bond hearing wherein the government bears the burden of proving by clear and convincing evidence that the individual is a danger to the community or flight risk, and where the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay. (*Id.* at 52-54). The Court otherwise denied the motion for a preliminary injunction with respect to the putative Post-Hearing Class. (*Id.*).

Class Petitioner subsequently filed a motion for reconsideration of the portion of the September 2020 D&O dismissing his claim that the INA requires IJs to consider alternatives to money bond or the ability to pay. (Dkt. 49). On March 29, 2021, the Court issued a Decision and Order (Dkt. 59) (the "March 2021 D&O") denying both the motion for reconsideration and the unresolved portion of the motion seeking to certify the putative Post-Hearing Class.

The parties cross-appealed the portion of the September 2020 D&O resolving Petitioners' motion for a preliminary injunction to the Court of Appeals for the Second Circuit. (Dkt. 52; Dkt. 60). On June 13, 2022, while that appeal remained pending, the Supreme Court decided *Garland v. Aleman Gonzalez*, __ U.S. __, 142 S. Ct. 2057 (2022). In *Aleman Gonzalez*, the Court held that 8 U.S.C. § 1252(f)(1) deprives district courts of jurisdiction to entertain requests for class-wide injunctive relief by "aliens who were detained by the Federal Government pursuant to 8 U.S.C. § 1231(a)(6) pending removal from this country" and who "alleg[ed] that § 1231(a)(6) requires the Government to provide bond hearings in cases like theirs." 142 S. Ct. at 2062.

The parties agreed that the Supreme Court's decision in *Aleman Gonzalez* required vacatur of the preliminary injunction issued in this case. (*See* Dkt. 96). Petitioners, with Respondent's consent, sought to "vacate the preliminary injunction on appeal, dismiss the Government's appeal and Petitioners' cross-appeal, and remand the case to the district court for further proceedings." (Dkt. 97). The Second Circuit granted Petitioners' motion on August 26, 2022. (*Id.*).

Following remand, the parties advised the Court that Class Petitioner would be moving for summary judgment and that Respondent would be moving to decertify the Pre-Hearing Class and for dismissal. (*See* Dkt. 107). The parties filed their respective motions on December 1, 2022. (Dkt. 108 (Respondent's motion to decertify the Pre-Hearing Class and for dismissal); Dkt. 109 (Class Petitioner's motion for summary judgment)). Responses were filed on January 10, 2023. (Dkt. 114; Dkt. 115). Class Petitioner filed his reply on January 19, 2023 (Dkt. 116), and Respondent filed his reply on January 24, 2023

(Dkt. 117). The Court heard oral argument on May 25, 2023, and reserved decision. (Dkt. 121).

For the reasons that follow, the Court grants Respondent's motion for decertification of the Pre-Hearing Class and to dismiss (Dkt. 108) and denies Class Petitioner's motion for summary judgment as moot (Dkt. 109).

## DISCUSSION

### I.  Impact of *Aleman Gonzalez*

The motions presently before the Court are premised in part on the parties' disparate views regarding the impact of *Aleman Gonzalez*. Respondent argues that the holding in *Aleman Gonzalez* means Class Petitioner's "claims cannot support class-wide relief." (Dkt. 108-1 at 4). More particularly, Respondent contends that "although *Aleman Gonzalez* addressed only injunctions, its logic supports extending § 1252(f)(1)'s prohibition on class-wide relief to declaratory orders that function as injunctions." (Dkt. 117 at 7). Class Petitioner, on the other hand, argues that "*Aleman Gonzalez* left the availability of class-wide declaratory relief under Section 1252(f)(1) untouched, and the Supreme Court has repeatedly suggested that Section 1252(f)(1) permits district courts to order such relief." (Dkt. 110 at 9-10). Because the scope of *Aleman Gonzalez* is a jurisdictional matter, the Court considers it first.

Section 1252(f)(1) states:

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter. . . other than with respect to the

application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). As the Supreme Court has explained, "[b]y its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999). In the September 2020 D&O, this Court concluded that § 1252(f)(1) did not bar the injunctive relief sought by Class Petitioner, because the injunctive relief would not "enjoin or restrain" the operation of § 1226(a). (Dkt. 41 at 22-25). As the parties agree, that conclusion cannot stand in the face of *Aleman Gonzalez*.

However, the Court also found in the September 2020 D&O that "§ 1252(f)(1) does not bar class-wide *declaratory* relief." (*Id*. at 21 (emphasis in original)). The Court agrees with Class Petitioner that *Aleman Gonzalez*—which did not rule on the availability of declaratory relief under § 1252(f)(1)—does not warrant a departure from this earlier holding. As the Court explained in the September 2020 D&O, the Supreme Court has suggested that § 1252(f)(1) does not render class-wide declaratory relief unavailable. (*Id*.); *see Nielsen v. Preap*, __ U.S. __, 139 S. Ct. 954, 962 (2019) (plurality opinion) ("[w]hether the . . . court had jurisdiction to enter . . . an injunction [under § 1252(f)(1)] is irrelevant because the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief").

Further, as Justice Sotomayor explained in her partial concurrence in *Aleman Gonzalez*, the argument that § 1252(f)(1) bars declaratory relief is "difficult to square . . . with the statute Congress enacted." 142 S. Ct. at 2078 n.9 (Sotomayor, J., concurring in part). In particular, "§ 1252(f)(1) is titled '[l]imit on injunctive relief,' in contrast to nearby § 1252(e)(1)'s broader '[l]imitations on relief,'" and, "[t]rue to its title, § 1252(e)(1) expressly prohibits courts from 'enter[ing] declaratory, injunctive, or other equitable relief' under certain circumstances, whereas § 1252(f)(1) makes no mention of declaratory relief." *Id.* Moreover, "a declaratory judgment (unlike an injunction) 'is not ultimately coercive.'" *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 471 (1974)). A declaratory judgment thus does not enjoin or restrain the operation of a statute, which is what § 1252(f)(1) prohibits. *Id.*; *see also Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021) (concluding that § 1252(f)(1) does not prohibit declaratory relief).

For these reasons, the Court continues to be of the view that § 1252(f)(1) does not deprive it of jurisdiction to enter class-wide declaratory relief in this case, should the Court be otherwise satisfied that the requirements for granting such relief are satisfied.

**II.    Motion to Decertify the Pre-Hearing Class and to Dismiss**

Having resolved this threshold issue, the Court turns next to Respondent's motion for decertification of the Pre-Hearing Class and dismissal. "[C]ertifications are not frozen once made." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013). "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "[A] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices,*

*Inc.*, 673 F.2d 566, 572 (2d Cir. 1982); *see Monaco v. Stone*, 187 F.R.D. 50, 59 (E.D.N.Y. 1999) ("A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed.").

"Rule 23(c)(1)(C) requires courts to reassess . . . class rulings as the case develops, and to ensure continued compliance with Rule 23's requirements." *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (quotation and citation omitted). "'In opposing [a] decertification motion,' as in the original class certification analysis, plaintiffs 'retain[ ] the burden to demonstrate that these requirements were satisfied' by a preponderance of the evidence." *Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227 (SHS), 2018 WL 3733944, at *2 (S.D.N.Y. Aug. 6, 2018) (alterations in original) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016)).

In addition to considering motions to decertify, "district courts have the authority to *sua sponte* decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before final judgment is entered." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021). While "an intervening event may often be the impetus for a district court to *sua sponte* decide that the requirements of Rule 23 are no longer met," such an intervening event need not be "significant"—"[i]nstead, the district court need only find that a previously satisfied requirement of Rule 23 is now lacking." *Id*. at 262.

To be appropriately certified, a class must satisfy the requirements of Rule 23(a) <u>and</u> "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Here, the Court found in the September 2020 D&O that the Pre-Hearing Class satisfied the requirements of Rule 23(b)(2), which allows for

certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

Respondent contends that the requirements of Rule 23(b)(2) are no longer satisfied in this case because: (1) the Court certified the Pre-Hearing Class only for purposes of injunctive relief, and injunctive relief is no longer available; (2) "Rule 23(b)(2) authorizes 'final injunctive relief or *corresponding* declaratory relief' when such relief would be 'appropriate respecting the class as a whole,'" and "[b]ecause this Court cannot issue class-wide injunctive relief, there can be no 'corresponding' declaratory relief"; and (3) post-*Aleman Gonzalez*, the Court cannot issue a declaratory order that would provide relief to each member of the class. (Dkt. 108-1 at 7-12). For the reasons that follow, the Court concludes that, in light of *Aleman Gonzalez*, it is not able to issue an indivisible injunctive or declaratory remedy to the Pre-Hearing Class. Accordingly, certification under Rule 23(b)(2) is no longer appropriate.

As to an indivisible injunctive remedy—which is what the Court had previously determined was available in this case (*see* Dkt. 41 at 46 (finding that the Court could "certify, for purposes of injunctive relief, a class of individuals who have not yet received a bond hearing"))—it is undisputed that such relief is not available post-*Aleman Gonzalez*. With respect to declaratory relief, in deciding whether to issue a declaratory judgment, the

Court must consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether the judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 CIV. 8152 (JFK), 2020 WL 6585702, at *6 (S.D.N.Y. Nov. 10, 2020) ("[T]he primary issues in assessing the appropriateness of declaratory relief are '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012))). In other words, the relevant question is whether the Court could, in this case, issue an indivisible declaratory judgment that would satisfy these requirements.

The Court finds that it could not issue such an indivisible declaratory judgment. Class Petitioner has asked the Court for a declaration outlining the specific requirements that the Due Process Clause places on the government with respect to people detained under § 1226(a). (*See* Dkt. 110 at 31). Specifically, Class Petitioner proposes that the Court issue the following declaration:

> The Due Process Clause requires that people detained under 8 U.S.C. § 1226(a) receive custody hearings in which the government bears the burden to justify continued detention by clear and convincing evidence that the detainee is a danger to others or a flight risk, and even if they are, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detained person's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

(*Id*.). This proposed declaration is broader than the Court's prior ruling in connection with the now-vacated preliminary injunction because the Court's prior decision "did not specify whether due process requires consideration of alternative conditions of release once the IJ found the noncitizen presents a danger[.]" (Dkt. 110 at 31 n.17).

As Class Petitioner concedes in opposing Respondent's motion for decertification, the Court's issuance of the proposed declaration would not compel the government to operate the relevant statute in any particular way. (*See* Dkt. 114 at 12 ("The declaration sought here . . . would not compel the government to operate the statute in any particular way.")). Counsel for Class Petitioner repeated this concession at oral argument, stating that because declaratory relief is not injunctive relief, the government "would not be required to do anything." In other words, the government would not be required—as it was by the Court's preliminary injunction—to provide bond hearings that complied with the procedures outlined by the Court. Instead, individual class members would still need to bring individual habeas corpus petitions, but could "in those petitions invoke prior class-wide declaratory relief as one element in establishing their entitlement to *individual* injunctive relief." (Dkt. 114 at 12 (emphasis in original)). However, as the Supreme Court has explained, "what makes [a declaratory judgment] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). Here, by Class Petitioner's own description of the practical effect of the requested declaration, it would not satisfy this standard. Rather than

- 11 -

changing the government's behavior, the requested declaration would instead be relied upon by individual class members in hypothetical future litigation, in which those individual class members would be asking different courts to compel the government to conduct bond hearings in a particular manner based on issue preclusion.

The discussion at oral argument illustrated the essentially advisory nature of the declaration sought by Class Petitioner. The Court asked Class Petitioner's counsel how the proposed declaration would operate in practice, to which counsel responded that each class member would appear for a bond hearing with his or her rights already declared. Accordingly, counsel indicated, each class member could bring either a pre- or post-custody hearing habeas corpus petition at which issue preclusion would apply, and the only thing left for the court hearing the petition to determine would be prejudice. When asked whether this would not simply amount to this Court imposing its view of what the Due Process Clause requires in the context of § 1226(a) on other judges in this District in these hypothetical future habeas corpus proceedings, counsel was unable to proffer a plausible explanation for why this was not the case.

This Court does not deem it an appropriate exercise under the Declaratory Judgment Act to attempt to bind other district judges to its view of the law in hypothetical future habeas corpus proceedings involving litigants whose individual circumstances this Court has never had occasion to consider. It is well-established that "the decisions of district courts, even those located within the same district, are not binding on other district courts." *Sharp v. Ally Fin., Inc.*, 328 F. Supp. 3d 81, 97 (W.D.N.Y. 2018) (quotation omitted). The Declaratory Judgment Act should not serve as a loophole to this longstanding principle.

The Court's conclusion is supported by the fact that, after the Court certified the Pre-Hearing Class, the Second Circuit decided *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). In *Velasco Lopez*, the Second Circuit emphasized that "[h]abeas corpus, as the Supreme Court has said, is an 'adaptable remedy,' the 'precise application and scope' of which changes 'depending upon the circumstances.'" *Id*. at 855 (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)). Acknowledging the individualized nature of the inquiry, the *Velasco Lopez* court further declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden" and recognized that "the Government's interest may have initially outweighed short-term deprivation of Velasco Lopez's liberty interests." *Id*. at 855 & n.13. In other words, *Velasco Lopez* suggests that there could be cases in which failing to shift the burden to the government at the outset would not violate due process, because the interests at that stage of the proceedings differ from the interests after prolonged detention.

While counsel for Class Petitioner suggested at oral argument that the due process inquiry, as articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), is not concerned with individual circumstances and focuses on the legal interests in the abstract, the *Velasco Lopez* decision focused heavily on the specifics of the petitioner's detention in assessing the strength of his individual interest. *See* 978 F.3d at 851-852; *see also Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist*., 902 F.2d 208, 211 (2d Cir. 1990) ("The constitutional contours of due process turn on the specific circumstances of the case, including the governmental and private interests at issue."). Moreover, accepting counsel's contention that the issue is a pure legal question divorced from a specific class member's

- 13 -

individual circumstances raises additional concerns about the utility of the proposed declaration. The Second Circuit has recently explained that "under federal preclusion law, issue preclusion . . . applies to purely legal issues <u>unless policy considerations counsel otherwise</u>." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (emphasis added); *see also Env't Def. v. U.S. E.P.A.*, 369 F.3d 193, 202-203 (2d Cir. 2004) ("To the extent that EPA characterizes a number of the issues as questions of law—and therefore not dependent on the factual context—its arguments implicate another limitation on applying collateral estoppel. Where pure questions of law—unmixed with any particular set of facts—are presented to a court, the interests of finality and judicial economy may be outweighed by other substantive policies." (quotation and alteration omitted)). In other words, a court in a future hypothetical habeas corpus proceeding involving a member of the class could potentially be called upon to determine whether there were substantive policy considerations counseling against the application of issue preclusion. Thus, far from settling the issue and offering relief from uncertainty, the requested declaration has the potential to simply engender additional litigation.

The Court further notes that federal courts that have been squarely presented with this issue of what the Due Process Clause requires with respect to short-term detention under § 1226(a) have reached disparate results. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (finding that Due Process Clause does not require provision of bond hearing pursuant to § 1226(a) at which the government bears the burden of proof by clear and convincing evidence); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (finding that, to justify detention under § 1226(a), Due Process Clause requires

the government to either (1) prove by clear and convincing evidence that the detainee poses a danger to the community or (2) prove by a preponderance of the evidence that the detainee poses a flight risk).  The unsettled and contested nature of the legal issue at the heart of this litigation counsels against the entry of the declaratory judgment requested by Class Petitioner.[2]

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Supreme Court has acknowledged the "unique breadth of this discretion to decline to enter a declaratory judgment[.]" *Id*. at 287.  Particularly in light of the intervening changes in the law since the Court's issuance of the September 2020 D&O, the Court finds that this is not a case in which issuance of a declaratory judgment would be appropriate.  As the Court noted in the March 2021 D&O, because a class-wide declaratory judgment "would not obviate the need for individualized habeas corpus petitions," the Court would not be able to issue a single declaratory judgment that would finalize the controversy and offer relief from uncertainty with respect to the class as a whole.  (*See* Dkt. 59 at 16); *see also Trinh v. Homan*, 466 F.

---

[2]     To be clear, this Court continues, for the reasons discussed at length in the September 2020 D&O, to be of the view that the Due Process Clause requires that individuals detained under § 1226(a) be provided a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk, and where the immigration judge must consider non-bond alternatives to detention or, if setting a bond, ability to pay.  The Court's acknowledgment that there is disagreement among federal judges on this point should not be taken to suggest otherwise.

Supp. 3d 1077, 1092 (C.D. Cal. 2020) (denying request for "a class-wide declaration that each individual class-member has satisfied a burden in hypothetical future cases"). Having reached this conclusion, the Court need not and does not reach the additional arguments raised by Respondent, including whether the term "corresponding" as used in Rule 23(b)(2) prohibits the issuance of declaratory relief standing alone.

Class Petitioner argues in a footnote that if the Court finds certification no longer appropriate under Rule 23(b)(2), it could nevertheless "certify the class under either Rule 23(b)(1)(A) or Rule 23(b)(3)." (Dkt. 114 at 9). As an initial matter, the Court need not consider arguments relegated to a footnote. *See, e.g., F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014) ("It is well settled . . . that a court need not consider arguments relegated to footnotes[.]"); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 256 n.4 (S.D.N.Y. 2009) ("[B]ecause the argument is made wholly in a footnote . . ., the Court may choose to disregard it."); *cf. Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.") (internal quotation omitted). In any event, Class Petitioner never filed a motion seeking certification on this basis and he has not satisfied his burden of demonstrating that certification would be appropriate under either of these provisions of Rule 23(b)(2).

For all these reasons, the Court finds that decertification of the Pre-Hearing Class is appropriate. Based on that determination and the Court's resolution of the parties' prior motions, the only claims remaining in this action are the individual claims made by Class Petitioner. However, it is undisputed that Class Petitioner was released from custody more

than three years ago.  The Court accordingly agrees with Respondent that Class Petitioner's remaining individual claims are moot.

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Jackson v. Holder*, 893 F. Supp. 2d 629, 631 (S.D.N.Y. 2012) (internal quotation marks and citation omitted) (alteration in original). "Where a habeas Petition is based upon a criminal conviction, the cause is not rendered moot by the Petitioner's release from custody, provided that [the] Petitioner continues to suffer 'collateral consequences' of the conviction upon which the now-ended incarceration was based." *Denis v. DHS/ICE of Buffalo, N.Y.*, 634 F. Supp. 2d 338, 340 (W.D.N.Y. 2009).  However, "[t]he district courts in this Circuit to have considered the issue have found that where an alien challenging his detention under 28 U.S.C. § 2241 is released during the pendency of his Petition under an order of supervision, the Petition is rendered moot."  *Id.* at 341; *see also Williams v. INS*, No. 02CIV3814(GBDGWG), 2005 WL 1994102, at *2 (S.D.N.Y. Aug. 18, 2005) (finding the petitioner "lacks any interest in the outcome of this suit inasmuch as the relief he has requested—release from detention—has already been afforded to him"); *Johnson v. Reno*, 143 F. Supp. 2d 389, 391 (S.D.N.Y. 2001) ("A habeas corpus Petition seeking release from (INS) custody is moot when the Petitioner is no longer in (INS) custody.").  Class Petitioner has offered no argument that his remaining individual claims are not moot.  Accordingly, they must be dismissed without prejudice for lack of subject matter jurisdiction.

### III. Class Petitioner's Motion for Summary Judgment

Class Petitioner seeks summary judgment on the class-wide due process claims and declaratory relief. (*See* Dkt. 110). Having determined that the Pre-Hearing Class should be decertified, and the remaining individual claims must be dismissed as moot, the Court denies Class Petitioner's motion for summary judgment as moot.

### CONCLUSION

For the reasons explained above, Respondent's motion for decertification and to dismiss (Dkt. 108) is granted and Class Petitioner's motion for summary judgment (Dkt. 109) is denied as moot. The Pre-Hearing Class is decertified and Class Petitioner's remaining individual claims are dismissed without prejudice as moot. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

                                                                _____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     June 21, 2023
           Rochester, New York